UNITED STATES v. FIFTY CASES OF DISTILLED SPIRITS.

(District Court, D. Oregon. December 1, 1897.)

No. 4,251.

COMMERCE—IMPORTATION OF SPIRITS INTO ALASKA—VIOLATION OF REGULATIONS.

An attempt to export distilled spirits from a port of the United States cannot be construed as an attempt to import such spirits into the territory of Alaska, in violation of the regulations prohibiting such importation, made by the president under Rev. St. § 1955, though such importation was intended by the shipper.

John H. Hall, U. S. Atty., and Charles J. Schnabel, Asst. U. S. Atty.

John M. Gearin and W. T. Hume, for claimant.

BELLINGER, District Judge.    This is a proceeding by the United States for the forfeiture, under section 1955 of the Revised Statutes, of 50 cases of distilled spirits, for an attempted unlawful importation thereof into the territory of Alaska.    Shortly stated, this charge is that the 50 cases of spirits were placed upon the dock at Portland for unlawful importation into Alaska, and that, for the purpose of misleading the officers of the customs service, the packages were labeled "Cumberland and Homemade Tomato Catsup"; that while on said wharf for said unlawful exportation from Portland, and unlawful importation into Alaska, "and while then and there being attempted to be imported into" Alaska, and before they were actually placed on board the steamer for shipment, they were seized by the collector of customs.    The packages were not, in fact, exported, but the government contends that they were attempted to be exported, in the act of placing them on the dock for shipment.    It is also contended for the United States that this attempted exportation is, in effect, an attempt to import the packages into Alaska, for the reason that the attempted exportation from Oregon was with a view to their unlawful importation, as stated.    That part of section 1955 necessary to be considered is as follows:

"The president shall have power to restrict and regulate or to prohibit the importation and use of fire-arms, ammunition, and distilled spirits into and within the territory of Alaska.    The exportation of the same from any other port or place in the United States, when destined to any port or place in that territory, and all such arms, ammunition, and distilled spirits, exported or attempted to be exported from any port or place in the United States and destined for such territory, in violation of any regulations that may be prescribed under this section, and all such arms, ammunition, and distilled spirits landed or attempted to be landed or used at any port or place in the territory, in violation of such regulations, shall be forfeited."

It is probable that the words in this statute, "the exportation of the same from any other port or place in the United States, when destined to any port or place in that territory," with which the second sentence in this section begins, were intended as a part of the first sentence, which they follow; otherwise it is impossible to give a meaning to these words.    In the Statutes at Large (15 Stat. 241) the clause quoted is preceded by the word "and," with which this sentence is made to begin.    The section, as thus corrected, provides that:

"The president shall have power to restrict and regulate, or to prohibit the importation and use of fire-arms, ammunition and distilled spirits into and within the territory of Alaska, and the exportation of the same from any other port or place in the United States, when destined to any port or place in that territory, and all such arms, ammunition, and distilled spirits exported or attempted to be exported from any port or place in the United States and destined for such territory, in violation of any regulations that may be prescribed under this section, and all such arms, ammunition, and distilled spirits landed or attempted to be landed or used at any port or place in the territory, in violation of such regulations, shall be forfeited," etc.

As thus read, the president is empowered, not only to restrict and regulate or prohibit the importation of the prescribed articles into Alaska, but their exportation from any place in the United States. So far as the particular case is concerned, it is immaterial whether the statute is read to empower the president to regulate, restrict, or prohibit the exportation of the articles in question from places in the United States, since there has been no exercise of such power by the president, and there is therefor no prohibition against the exportation of spirits for importation into Alaska, unless the latter includes the former; and this is what is contended for by the government. However read, the section clearly distinguishes between the exportation of the contraband goods from places in the United States and their importation into Alaska. Each is made a ground of forfeiture "when it is in violation of the presidential regulation," and, without this, these words are opposed in their commonly accepted meaning. It would be an unnatural and unheard-of use of words to say that the attempt to export from one port involves an attempt to import into another, leaving out of consideration the fact that the act authorizes the president to prescribe regulations against each. The fact that the 50 cases of distilled spirits were labeled "Cumberland Homemade Catsup" has no bearing upon the question of an attempt to import into Alaska. This false designation is evidence of an intention to violate the presidential regulation against the importation of spirits into Alaska; but the intent is not the act, nor an attempt to commit it. The fraudulent device of the labels shows a contemplated crime against the United States, but this does not warrant the court in doing violence to the statute in order to punish those who are preparing to violate it. These packages of spirits were doubtless prepared for unlawful shipment to Alaska, and they were placed on the wharf for such shipment. It adds nothing to say that they were in transit from Portland when seized. They were not in transit from Portland, and the libel so shows. They were on the wharf in Portland. At most, there was an attempt to export; but, as already stated, there is no regulation against such an attempt. It is not for this that forfeiture is asked, or, under existing regulations, can be had. The exceptions to the libel are allowed.